[No. A062087. First Dist., Div. Four. Feb. 15, 1994.]

MARK MILMAN et al., Plaintiffs and Respondents, v.
VICTOR SHUKHAT et al., Defendants and Appellants.

**COUNSEL**

Mary Janette Delisi and Paul G. Bobrowski for Defendants and Appellants.

LeRoy W. Rice for Plaintiffs and Respondents.

## OPINION

**REARDON, J.**—Following the financial collapse of a real estate investment project, Mark and Valeria Milman and Leonid and Katrin Stolyarov brought an action against Josif Dubrovsky, Victor and Helen Shukhat, and others, alleging breach of contract, fraud, constructive fraud, and breach of covenant of good faith and fair dealing. Insofar as it related to the Shukhats, the plaintiffs sought declaratory relief concerning the rights of the parties under two notes and two deeds of trust which, on their face, appeared to have been signed by the Shukhats. During discovery, however, it was established that the Shukhats' signatures had been forged on the documents by Dubrovsky's employee, Vladimir Shapiro. Based on that fact, the Shukhats successfully moved for summary judgment. The Shukhats' motion for attorney fees pursuant to Civil Code section 1717[1] was denied.

The Shukhats appeal from the order denying attorney fees.[2] We reverse.

## I. FACTS

Josif Dubrovsky, a real estate broker for S & J Realty Investments, was involved in a real estate development project in the Strawberry Point area of Marin County, which entailed the development of four lots and the building and selling of four luxury homes. Vladimir Shapiro was employed as a licensed salesperson by S & J, and was responsible for the documentation and development of the Strawberry Point Project. The parties to this appeal were all investors in that project.

In the fall of 1988, Shapiro approached appellants Victor and Helen Shukhat and asked if they would like to invest in the project. The Shukhats agreed, and invested $50,000.

In January 1989, respondents Mark and Valeria Milman invested $80,000 in the project. A few months later, respondents Leonid and Katrin Stolyarov invested $50,000. Dubrovsky gave each couple straight notes as evidence of their investments, payable upon completion and sale of the homes.

Unbeknownst to the Shukhats, Dubrovsky and Shapiro transferred title to the four lots in the project into the names of various investors, including one lot placed in the name of the Shukhats. Later in 1989, Dubrovsky asked Shapiro to sign the Shukhats' names to promissory notes and deeds of trust,

---

[1]Unless otherwise stated, all section references are to the Civil Code.

[2]An order denying attorney fees is an appealable order. (See *Smith* v. *Krueger* (1983) 150 Cal.App.3d 752, 756 [198 Cal.Rptr. 174].)

made out in favor of the Milmans and Stolyarovs, respectively. Upon assurances by Dubrovsky that this was merely a formality, Shapiro signed the Shukhats' name on the documents and gave them to Dubrovsky. Dubrovsky then took the deeds to a notary public and asked her to notarize them. Out of friendship to Dubrovsky, the notary did so.

Dubrovsky then sent these promissory notes and deeds of trust to the Milmans and Stolyarovs. They assumed the documents were offered as further security for the original notes signed by Dubrovsky when the investments were first made. The Shukhats did not know at the time that any of this had occurred.

The Shukhats first became aware of these documents almost two years later, during the fall of 1991, when Mark Milman called Shukhat and asked for payment on a note which Milman said had become due. Shukhat said he did not know Milman nor had he signed any documents relating to him. On December 3, 1991, Milman sent a demand letter to the Shukhats, and enclosed a copy of the note and deed of trust which appeared to bear the Shukhats' signatures.

When Shukhat received these documents, he called Shapiro for an explanation. Shapiro said that his signing of the documents "was a mere formality," and he assured Shukhat that he would not be responsible for the consequences. Shukhat told Shapiro that under no circumstances was he to sign the Shukhats' names to any other documents.

In February 1992, the Milmans and Stolyarovs filed this action against Dubrovsky, the Shukhats, and others. In their complaint, the plaintiffs, in part, sought declaratory relief concerning the rights of the parties under the two notes and two deeds of trust.

In the causes of action at issue in these proceedings, plaintiffs alleged that Dubrovsky was claiming the original notes signed by him were unenforceable. Instead, Dubrovsky was claiming the Shukhats were liable to the plaintiffs on the later notes and deeds of trust. Plaintiffs alleged that the Shukhats were claiming their signatures on the documents were forged and that therefore they were not liable. The plaintiffs' theory was that Dubrovsky was responsible on the original notes, with the Shukhats secondarily liable under the subsequent notes and deeds of trust. Plaintiffs asked the court to declare the rights of the parties.

In their complaint, plaintiffs quoted from the notes and deeds of trust and attached them as exhibits. They alleged that each note "also provided for

attorney fees if an action should be brought on the note." Each note contained the following statement: "Should suit be commenced to collect this note or any portion thereof, such sum as the Court may deem reasonable shall be added hereto as attorney's fees."

The Shukhats answered by filing a general denial.

At a deposition in August 1992, Dubrovsky admitted that he had asked Shapiro to sign the Shukhats' names on the notes and deeds of trust. Based on this admission, the Shukhats' attorney wrote to plaintiffs' attorney and asked that the matter against them be dismissed. Although acknowledging the apparent forgery, plaintiffs' attorney refused to dismiss the claims against the Shukhats.

Several months later, the Shukhats' attorney again suggested that plaintiffs dismiss their claim against the Shukhats. He warned that the Shukhats were being forced to spend money on attorneys "for which [the Shukhats] will seek indemnity from someone else. [¶] Your clients may want to take steps to limit this risk."

In December 1992, the Shukhats moved for summary judgment, citing as an undisputed fact that the promissory notes and deeds of trust relied upon by the plaintiffs had been forged by Vladimir Shapiro without their knowledge or authority. Plaintiffs did not directly dispute these facts. Instead, they stated that when the documents were received, they believed in good faith they were intended to be additional security for Dubrovsky's earlier note.

The trial judge granted the Shukhats' motion for summary judgment, finding that the Shukhats were "not liable under the promissory notes and trust deeds attached to the complaint . . . , that Plaintiffs Mark Milman, Valerie [sic] Milman, Leonid Stolyarov, and Katrin Stolyarov shall take nothing against [the Shukhats] under their complaint, that [the Shukhats] are the prevailing party and shall recover . . . their costs of suit and their reasonable attorney's fees to the extent awarded upon proper and timely application to this Court."

The Shukhats then moved for attorney fees under section 1717. Plaintiffs opposed the motion on the ground that in proceeding against appellants, they were seeking declaratory relief and were not seeking "to enforce that contract" within the meaning of section 1717. A commissioner, sitting as a temporary judge, denied the motion for attorney fees "in its entirety on the grounds that the underlying action against them did not involve an action on a contract."

## II. Discussion

Section 1717, subdivision (a) provides, in part: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs. . . ."

■ Section 1717 was enacted to establish mutuality of remedy where a contractual provision makes recovery of attorney fees available for only one party and to prevent oppressive use of one-sided attorney fees provisions. (*Reynolds Metals Co.* v. *Alperson* (1979) 25 Cal.3d 124, 128 [158 Cal.Rptr. 1, 599 P.2d 83].) Construing section 1717 to carry out its purpose, the Supreme Court held that the statute gives a reciprocal remedy for a nonsignatory defendant, sued on a contract as if he or she were a party to it, "when a plaintiff would clearly be entitled to attorney's fees should he prevail in enforcing the contractual obligation against the defendant." (25 Cal.3d at p. 128.)

Thus, in a routine action to enforce a promissory note, where a defendant prevails on a theory that does not involve a challenge to the validity of the contract, the defending party clearly would be entitled to recover attorney fees. ■ In this case, however, we have an action in declaratory relief in which the defendants prevailed because their signatures on the purported contracts were forged. Thus, respondents argue that the proceedings did not involve an action "on the contract" nor was the proceeding brought "to enforce that contract" within the meaning of section 1717.

■ Section 1717 was enacted in 1968. (Stats. 1968, ch. 266, § 1, p. 578.) It is one of several similarly worded statutes which are recognized as being "part of an overall legislative policy designed to enable consumers and others who may be in a disadvantageous contractual bargaining position to protect their rights through the judicial process by permitting recovery of attorney's fees incurred in litigation in the event they prevail. (See e.g., Civ. Code, § 1811.1 [Installment Sales Contracts]; Civ. Code, § 2983.4 [Conditional Sales Contracts]; [citations].)" (*Coast Bank* v. *Holmes* (1971) 19 Cal.App.3d 581, 597, fn. 3 [97 Cal.Rptr. 30] [third bracketed insertion added].)

One of the statutes just cited, section 1811.1, was construed by our Supreme Court in 1968. (*Morgan* v. *Reasor Corp.* (1968) 69 Cal.2d 881,

896-897 [73 Cal.Rptr. 398, 447 P.2d 638].) Similar to section 1717, section 1811.1 provides for the award of attorney fees "to the prevailing party *in any action on a contract*" subject to the Unruh Civil Rights Act (§ 1801 et seq.), relating to installment sales contracts. (§ 1811.1, italics added.) In *Morgan*, the Supreme Court upheld a trial court's award of attorney fees and costs in an action for declaratory relief, stating: "Although some of the relief sought in this case was arguably of a declaratory nature, section 1811.1 still applies. The legislative history of the section requires us to interpret liberally the phrase 'on a contract.' " (69 Cal.2d at p. 896.)

Another similarly worded statute, section 2983.4, was construed in *Leaf* v. *Phil Rauch, Inc.* (1975) 47 Cal.App.3d 371 [120 Cal.Rptr. 749]. In *Leaf*, the issue was whether section 2983.4 applied even though the contract at issue had been extinguished by its earlier rescission. After discussing *Morgan* v. *Reasor Corp., supra,* 69 Cal.2d 881, the Court of Appeal stated: "Inasmuch as Civil Code section 1811.1 provides for the recovery of attorneys' fees in language identical in all material respects with the language of section 2983.4, the phrase 'on a contract' should be given the same meaning in both statutes. [Citation.]" (*Leaf* v. *Phil Rauch, Inc., supra,* at p. 378.) Construing section 2983.4 liberally, the court held that even though the contract had been extinguished by its rescission, ". . . the action nevertheless 'involved' that contract" so as to entitle the prevailing party to attorney fees. (47 Cal.App.3d at pp. 378-379, fn. omitted.)

The statute in this case, section 1717, was construed in *Care Constr., Inc.* v. *Century Convalescent Centers, Inc.* (1976) 54 Cal.App.3d 701 [126 Cal.Rptr. 761]. In that case, an award of attorney fees was upheld even though the defendants prevailed on a theory that no lease or contract ever existed. The court commented that ". . . the 'on a contract' language of Civil Code, sections 1811.1 and 2983.4, appears to have the same meaning when found in section 1717." (*Id.,* at p. 706.) The court stated that one who defends a lawsuit "on a contract" on the basis that there was no valid agreement is nevertheless entitled to attorney fees under the statute. (*Ibid.*) The court therefore held that "where there is an action on a purported lease which contains a provision for attorney's fees for the lessor that the lessee is entitled to attorney's fees under Civil Code, section 1717, if he succeeds in defending on the theory that there was no valid or enforceable lease." (*Id.,* at p. 707.)

In *Jones* v. *Drain* (1983) 149 Cal.App.3d 484 [196 Cal.Rptr. 827], it was similarly held "that a prevailing defendant sued for breach of contract containing an attorney's fees provision and having had to defend the contract cause of action is entitled to recover its own attorney's fees and costs

therefor, even though the trial court finds no contract existed." (*Id.*, at p. 490.)

Numerous appellate decisions have since applied section 1717. In *North Associates* v. *Bell* (1986) 184 Cal.App.3d 860 [229 Cal.Rptr. 305], Division Three of this district summarized these cases and recognized "the fundamental purpose of section 1717 to insure mutuality of a prevailing party's access to an award of attorney fees. As long as an action 'involves' a contract, and one of the parties would be entitled to recover attorney fees under the contract if that party prevails in its lawsuit, the other party should also be entitled to attorney fees if it prevails, even if it does so by successfully arguing the inapplicability, invalidity, unenforceability, or nonexistence of the same contract. [Citations.]" (*Id.*, at p. 865.)

Turning to this case, we hold first that section 1717 does apply, even though the relief sought by respondents was of a declaratory nature. (*Morgan* v. *Reasor Corp.*, *supra*, 69 Cal.2d at p. 896 [applying § 1811.1]; *Krueger* v. *Bank of America* (1983) 145 Cal.App.3d 204, 216-217 [193 Cal.Rptr. 322] [applying § 1717].)

Moreover, as we have stated, one purpose of section 1717 was to establish mutuality of remedy when the contract makes recovery of attorney fees available for only one party. (*Reynolds Metals Co.* v. *Alperson*, *supra*, 25 Cal.3d at p. 128; *Leach* v. *Home Savings & Loan Assn.* (1986) 185 Cal.App.3d 1295, 1305 [230 Cal.Rptr. 553].)

Under our facts, had plaintiffs prevailed in this case, the Shukhats' forgery defense necessarily would have been disbelieved. In that situation, the promissory notes would be valid, and the plaintiffs could recover attorney fees under those notes. Under section 1717, if plaintiffs would have been able to recover attorney fees from the Shukhats had they prevailed, the Shukhats likewise may recover fees from plaintiffs should they prevail. This holds true even though the basis for the Shukhats' successful motion for summary judgment was the undisputed fact that their signatures on the disputed documents had been forged. Since the action "involved" a contract, and plaintiffs would have been entitled to recover attorney fees under the contract had they prevailed, the Shukhats are entitled to attorney fees even though they prevailed by successfully arguing the nonexistence of the same contract. (See *North Associates* v. *Bell*, *supra*, 184 Cal.App.3d at p. 865.)

Respondents cite *Sciarrotta* v. *Teaford Custom Remodeling, Inc.* (1980) 110 Cal.App.3d 444, 449 [167 Cal.Rptr. 889] for the proposition that section 1717 was intended to have a literal application. In *Sciarrotta*, the court held

that section 1717, as it then read, limited mutuality to those specific provisions of the contract in which attorney fees are provided. (110 Cal.App.3d at p. 446.) Not only is the interpretive approach to section 1717 taken in *Sciarrotta* contrary to the overwhelming weight of authority, but the court's narrow reading of the statute was expanded by the Legislature in 1983.[3] (See *Boyd* v. *Oscar Fisher Co.* (1989) 210 Cal.App.3d 368, 380 [258 Cal.Rptr. 473].)

Although a trial court retains great discretion in fixing the amount of attorney fees, it was an abuse of discretion in this case for the trial court to deny appellants attorney fees altogether. (*Christensen* v. *Dewor Developments* (1983) 33 Cal.3d 778, 786 [191 Cal.Rptr. 8, 661 P.2d 1088].)

Appellants ask this court to determine the appropriate amount of attorney fees to be awarded relating to activities in the trial court. They also ask that we separately award attorney fees and costs incurred during this appeal.

■ Although we possess the power to appraise and fix attorney fees, the better practice is to remand the cause to the trial court to determine the amount of such fees. (See *Schoolcraft* v. *Ross* (1978) 81 Cal.App.3d 75, 82 [146 Cal.Rptr. 57].) In doing so, appellants shall also be allowed to make a motion in that court for attorney fees on appeal. The trial court should, after the remittitur is filed, hear any application for attorney fees for services on appeal, and fix the reasonable amount thereof. (See *Christensen* v. *Dewor Developments*, *supra*, 33 Cal.3d at pp. 786-787.)

## III. Disposition

The order denying defendants' claim for attorney fees is reversed. Defendants shall be permitted to make a motion in superior court for attorney fees in the superior court and on appeal. Defendants shall recover costs on appeal.

Anderson, P. J., and Poché, J., concurred.

---

[3]In 1983, the Legislature amended section 1717, subdivision (a) by adding the following language: "Where a contract provides for attorney's fees, as set forth above, such provision shall be construed as applying to the entire contract, unless each party was represented by counsel in the negotiation and execution of the contract, and the fact of that representation is specified in the contract." (Stats. 1983, ch. 1073, § 1, p. 3785.)