**SUNSTONE BEHAVIORAL HEALTH, INC., Plaintiff,**

v.

**ALAMEDA COUNTY MEDICAL CENTER, Defendant.**

**No. Civ. 06–2664 FCD DAD.**

United States District Court, E.D. California.

Aug. 20, 2009.

---

**16.** Again it is not clear to the court the emotional distress caused by the physical disabili- ty is not covered.

Jonathan Lawrence Brophy, Waller Lansden Dortch and Davis, Los Angeles, CA, Steven Alexander Browne, Waller Lansden Dortch and Davis LLP, Santa Monica, CA, for Plaintiff.

Karen M. Goodman, Summer Dawn Haro, Goodman & Associates, Sacramento, CA, for Defendant.

## MEMORANDUM AND ORDER RE: MOTION FOR ATTORNEYS' FEES AND EXPENSES, REQUEST TO RECOVER COSTS

WILLIAM B. SHUBB, District Judge.

### I. Factual and Procedural Background

Plaintiff Sunstone Behavioral Health Inc. ("Sunstone") brought this action on November 22, 2006, against defendant Alameda County Medical Center ("ACMC") alleging breach of contract and breach of the implied covenant of good faith and fair dealing with respect to an "Outpatient Psychiatric Consulting Contract." The matter came on regularly for trial before the court, sitting without a jury, on June 16, 18, 19, and 23, 2009. The court ruled in plaintiff's favor, awarding $492,680.58 in damages, and judgment was entered accordingly.

Plaintiff now moves for attorneys' fees and untaxed costs pursuant to California Civil Code section 1717 in the amounts of $328,970.65 and $15,922.46, respectively, and also requests to recover taxable costs in the amount of $10,637.31 pursuant to Federal Rule of Civil Procedure 54(d)(1) and Eastern District Local Rule 54–292.

### II. Discussion

#### A. Motion for Attorneys' Fees and Untaxed Costs

"A federal court sitting in diversity applies the law of the forum state regarding an award of attorneys' fees." *Kona Enters., Inc. v. Estate of Bishop,* 229 F.3d 877, 883 (9th Cir.2000). Because this case

arises under diversity jurisdiction, 28 U.S.C. § 1332(a), the court must apply California law in deciding plaintiff's motion for attorneys' fees and untaxed costs.

Although California law "ordinarily does not allow for the recovery of attorneys' fees," California Civil Code section 1717 provides for an award of attorneys' fees where "the parties contractually obligate themselves" to so compensate each other. *Farmers Ins. Exchange v. Law Offices of Conrado Joe Sayas, Jr.*, 250 F.3d 1234, 1237 (9th Cir.2001) (citing Cal. Civ.Code 1717; *Trope v. Katz*, 11 Cal.4th 274, 279, 45 Cal.Rptr.2d 241, 902 P.2d 259 (1995)). Section 1717 specifically instructs:

> In any action on a contract, where the contract specifically provides that attorney[s'] fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney[s'] fees in addition to other costs.

Cal. Civ.Code 1717(a).

The contract upon which this action was brought contained the following provision regarding attorneys' fees and costs:

> Failure of [defendant] to pay any outstanding fees in full prior to termination of this Agreement, for any reason, shall subject [defendant] to specific damages in the amount of one thousand dollars ($1,000) per day until fees are paid in full, plus attorneys['] fees and expenses incurred in collecting outstanding fees and enforcing the terms of this provision.

(Ex. 1 § F.3, at 11.)

"California courts liberally construe 'on a contract' to extend to any action '[a]s long as an action "involves" a contract and one of the parties would be entitled to recover attorney[s'] fees under the contract if that party prevails in its lawsuit.' " *In re Baroff*, 105 F.3d 439, 442–43 (9th Cir.1997) (quoting *Milman v. Shukhat*, 22 Cal.App.4th 538, 545, 27 Cal.Rptr.2d 526 (1994)) (alteration in original). This flexible standard is easily satisfied in the instant case, and defendant does not dispute that plaintiff's lawsuit was brought "on a contract." (*See* Opp'n Mot. Atty. Fees 1:24–26.)

Although the attorneys' fees provision of the contract in this case only refers to "attorneys['] fees and expenses incurred *in collecting outstanding fees* and enforcing the of *this provision* " (Ex. 1 § F.3, at 11 (emphasis added)), section 1717 instructs that "[w]here a contract provides for attorney[s'] fees, ... that provision shall be construed as applying to the entire contract, unless each party was represented by counsel in the negotiation and execution of the contract, and the fact of that representation is specified in the contract." Cal. Civ.Code 1717(a). California courts have held that this provision

> requires, as a matter of law, that a contract which provides for an award of attorney[s'] fees for enforcing any part of a contract must be interpreted to provide for an award of attorney[s'] fees for enforcing any [other] part of the contract, regardless of any limitation in the language of the fees clause.

*Pajaro Dunes Rental Agency, Inc. v. Pajaro Dunes Ass'n*, No. 97–2516, 2002 WL 202412, at *2 (N.D.Cal. Feb. 5, 2002) (citing *Myers Building Indus., Ltd. v. Interface Tech., Inc.*, 13 Cal.App.4th 949, 968, 17 Cal.Rptr.2d 242 (1993)).

Here, the contract is silent as to whether the parties were represented by counsel during its negotiation, and defendant does not dispute that the attorneys' fees provision applies to enforcing the entire contract and not merely the collection of out-

standing fees. (*See* Opp'n Mot. Atty. Fees 1:24–26.) Nonetheless, defendant contends that plaintiff was not a "prevailing party" with respect to fees incurred between June 15, 2006, and October 4, 2006. Defendant further argues that certain fees and untaxed costs should be disallowed as unreasonable or unnecessarily incurred.

1. *Whether Plaintiff Was a "Prevailing Party" for Fees Incurred Between June 15, 2006 and October 4, 2006*

■ On October 4, 2006, plaintiff voluntarily dismissed a prior action against defendant before subsequently re-filing the complaint and initiating this case on November 22, 2006. (*See* Opp'n Mot. Atty. Fees 4:19–5:6; *see also* Complaint (Docket No. 2), *Sunstone Behavioral Health Inc. v. Alameda County Med. Ctr.,* (No. 06–1643); Complaint (Docket No. 2), *Sunstone Behavioral Health Inc. v. Alameda County Med. Ctr.,* (No. 06–2664).) Relying on Civil Code section 1717(b)(2), defendant contends that plaintiff is precluded from obtaining attorneys' fees incurred before October 4, 2006. Section 1717(b)(2) instructs, "Where an action has been voluntarily dismissed or dismissed pursuant to a settlement of the case, there shall be no prevailing party for purposes of this section."

Although neither party can claim to have "prevailed" in the prior action that was subject to voluntary dismissal, defendant does not dispute that plaintiff is the prevailing party in the instant action. Furthermore, while a court "may not award fees for legal work that is unrelated to a cause of action for which fees are authorized," *Thompson Pac. Constr., Inc. v. City of Sunnyvale,* 155 Cal.App.4th 525, 555–56, 66 Cal.Rptr.3d 175 (2007), the fees incurred between June 15, 2006, and October 4, 2006, plainly relate to the instant lawsuit, as the two complaints allege identical causes of action and pertain to the same factual circumstances. Thus, it is reasonable to infer that the efforts expended by plaintiff's counsel between June 15, 2006, and October 4, 2006, were not unnecessary and in fact directly furthered the prosecution of the instant lawsuit. (*See* Aug. 10, 2009 Browne Decl. ¶ 7 (providing that the second complaint was filed after only 1.1 hours of additional attorney time).) Accordingly, plaintiff is not precluded from recovering reasonable attorneys' fees incurred between June 15, 2006, and October 4, 2006.

2. *Whether Certain Fees Are Unreasonable or Were Unnecessarily Incurred*

■ The purpose of California Civil Code section 1717 is "to establish uniform treatment of fee recoveries in actions on contracts containing attorney fee provisions." *PLCM Group v. Drexler,* 22 Cal.4th 1084, 1094–95, 95 Cal.Rptr.2d 198, 997 P.2d 511 (2000) (quoting *Santisas v. Goodin,* 17 Cal.4th 599, 616, 71 Cal.Rptr.2d 830, 951 P.2d 399 (1998)). To achieve this goal, the trial court is given "broad authority to determine the amount of a reasonable fee." *Id.* at 1095, 95 Cal.Rptr.2d 198, 997 P.2d 511 (citing *Int'l Indus., Inc. v. Olen,* 21 Cal.3d 218, 224, 145 Cal.Rptr. 691, 577 P.2d 1031 (1978)); *see Montgomery v. Bio–Med Specialties, Inc.,* 183 Cal.App.3d 1292, 1297, 228 Cal.Rptr. 709 (1986) (providing that the trial court has "wide latitude in determining the amount of an award of attorneys['] fees"). In exercising this authority, the court is primarily guided by principles of equity. *See Beverly Hills Props. v. Marcolino,* 270 Cal.Rptr. 605, 221 Cal.App.3d Supp. 7, 12 (1990) ("[T]he award of attorney[s'] fees under section 1717, as its purposes indicate, is governed by equitable principles." (citing *Int'l Indus.,* 21 Cal.3d at 224, 145 Cal. Rptr. 691, 577 P.2d 1031)).

■ "[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." *PLCM*, 22 Cal.4th at 1095, 95 Cal.Rptr.2d 198, 997 P.2d 511. "The reasonable hourly rate is that prevailing in the community for similar work." *Id.* (citing *Margolin v. Reg'l Planning Comm'n*, 134 Cal.App.3d 999, 1004, 185 Cal.Rptr. 145 (1982)). After calculating the lodestar, the trial court "shall consider whether the total award so calculated under all of the circumstances of the case is more than a reasonable amount and, if so, shall reduce the section 1717 award so that it is a reasonable figure." *Id.* at 1095–96, 95 Cal. Rptr.2d 198, 997 P.2d 511 (quoting *Sternwest Corp. v. Ash*, 183 Cal.App.3d 74, 77, 227 Cal.Rptr. 804 (1986)).

■ Here, plaintiff proposes a lodestar figure of $328,970.65. This amount accounts for the hours principally expended by one partner (Steven Browne) and one associate (Jonathan Brophy) of the law firm Waller, Lansden, Dortch & Davis LLP ("Waller Lansden"), although certain fees generated by other partners, associates, and paralegals are also included. (*See* July 8, 2009 Browne Decl. ¶¶ 13–19.) This figure also reflects a ten-percent discount from Waller Lansden's standard billing rate due to the longstanding relationship between the firm and plaintiff. (*See id.* ¶ 7.)

In response to plaintiff's proposed lodestar figure, defendant raises several objections relating to the reasonableness of certain fees. Specifically, while conceding that the individual billing rates for the Waller Lansden attorneys on this matter were reasonable (*see* Opp'n Mot. Atty. Fees 5:28–6:5), defendant contends that these rates were effectively increased due to overstaffing on certain tasks (*id.* at 6:5–11). Defendant also argues that certain fees were incurred for unnecessary tasks or for non-legal work. (*See id.* at 8:5–14:25.)

As to the overstaffing argument, defendant directs the court to several entries in plaintiff's billing statements. Defendant specifically notes that, between June 15, 2006, and July 24, 2006, partners Browne and Weaver and associate Scott expended approximately 22.6 hours drafting the complaint filed in the original lawsuit. (*See* July 8, 2009 Browne Decl. Ex. 1 ("Fee Ex. 1").) In addition, on November 1 and 2, 2006, partners Browne and Weaver and associate Perry collectively billed $679.50 to review a letter from defendant's general counsel, Mary Ellen Gormley (*see id.*), and on January 22, 2007, they collectively billed $950 for a conference call with Sunstone's president, Dewey Greene (*id.* Ex. 2 ("Fee Ex. 2")). On or about January 8, 2007, partners Browne and Weaver billed $486 for a conference call with Sunstone's general counsel, Colbey Reagan. (*Id.*) They also billed $414, $366, and $261 for reviewing defendant's motion to dismiss, defendant's reply, and the denial of defendant's motion to dismiss, respectively, during March and April 2007. (*See id.*) Browne and Weaver also each spent thirty minutes reviewing a letter to Gormley on November 15, 2006 (Fee Ex. 1), and, on February 13, 2007, they spent a total of two hours drafting discovery requests (Fee Ex. 2).

The court first observes that, due to plaintiff's occasional use of "block-billing,"[1] it is not entirely accurate to state

---

1. " 'Block billing' is 'the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.' " *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 n. 2 (9th Cir.2007) (quoting *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1554 n. 15 (10th Cir.1996)).

that—for example—Browne and Weaver "billed $486[ ] for a 10 minute conference call" on or about January 8, 2007. (Opp'n Mot. Atty. Fees 7:20.) On that date, Browne's billing entry reflects not only a "[c]onference call with [Reagan] and [Weaver] re[garding a] motion to dismiss and case strategy," but also "prepar[ing] [an] opposition to [the] motion to dismiss." (Fee Ex. 1.) When reviewing such instances of block-billing, it is incumbent upon the court to "compare the hours expended against the tasks and assess the reasonableness of those tasks." *Fitzgerald v. City of Los Angeles*, No. 03–1876, 2009 WL 960825, at *8 (C.D.Cal. Apr. 7, 2009). After examining the billing entries identified by defendant and having considered the parties' contentions at oral argument, the court finds that the total time expended for the tasks reported by these attorneys was reasonable.

Further, while "[c]oncerns about overstaffing are a relevant consideration," determining whether there has been unnecessary duplication often requires a difficult exercise of "judgment and discretion, considering the circumstances of the individual case." *Id.* at *9 (citing *Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1286–87 (9th Cir.2004)). Other than simply directing the court to particular billing entries, defendant provides no persuasive reason why having two or three attorneys review and respond to Gormley's letter, conference with Greene and Reagan, draft the complaint, review a motion to dismiss, and draft discovery requests was unreasonable. *See, e.g., Moreno v. City of Sacramento*, 534 F.3d 1106, 1113 (9th Cir. 2008) ("Findings of duplicative work should not become a shortcut for reducing an award without identifying just why the

requested fee was excessive. . . ."); *Jefferson v. Chase Home Fin.*, No. 06–6510, 2009 WL 2051424, at *4 (N.D.Cal. July 10, 2009) ("Chase has identified few substantive areas of duplicative effort, and does not make a persuasive case that the case was overstaffed. . . . [B]ecause the bulk of the hours spent were from a few attorneys, this does not appear unreasonable."); *see also Fitzgerald*, 2009 WL 960825, at *8 ("The Court does not find the presence of lawyers at court meetings to be excessive or unnecessarily duplicative in this case . . . Plaintiffs typically only seek fees for two or three lawyers at those meetings."). Accordingly, the court will not deduct these fees from plaintiff's lodestar figure.

■ Regarding tasks identified by defendant as unnecessary, defendant contends that 15.8 hours expended by Browne during April 2007 to oppose defendant's motion to dismiss were unreasonable because, before April 2007, Browne had already expended roughly three hours reviewing the motion, while Perry had spent approximately 36.4 hours researching and drafting the opposition. (*See* Opp'n Mot. Atty. Fees 9:25–10:23; Fee Ex. 2.)

After reviewing plaintiff's opposition to the relevant motion to dismiss,[2] the court concludes that the hours expended by plaintiff's counsel were not unreasonable. Defendant's motion to dismiss included a memorandum of points and authorities, declarations, and a three-part exhibit totaling over eighty pages (*see* Docket No. 15); in turn, plaintiff's opposition included a seventeen-page memorandum of points and authorities with citations to over thirty-one state and federal cases and statutes (*see id.* No. 16), as well as declarations which totaled twenty-nine additional pages

**2.** Technically, the work performed before April 2007 was in reference to a motion to dismiss that was subsequently mooted by the filing of plaintiff's First Amended Complaint.

(*See* Docket Nos. 8, 12, 13–14.) The work performed by Browne in April 2007 was to oppose a practically identical motion to dismiss filed on March 6, 2007. (*See id.* No. 15.)

(*see id.* Nos. 17–18). Thus, for each hour of attorney time, plaintiff's counsel produced roughly two-thirds of a page of their opposition; in other cases from this district involving far simpler issues, "a reasonable rate for drafting motions" has been found to be "approximately one page an hour," which did not include time for reviewing the opposing party's motion, research, and discussing strategy with clients. *Thao v. Comm'r of Soc. Sec.*, No. 06–2206, 2009 WL 737019, at *2 (E.D.Cal. Mar. 19, 2009) (Kellison, Mag. J.). The reasonableness of plaintiff's counsel's fees is further supported by the denial of defendant's motion to dismiss in its entirety. (*See* Docket No. 21.) Accordingly, for the foregoing reasons, the court will not deduct these fees from plaintiff's lodestar figure.

■ Defendant further contends that $297 billed by Browne on November 21, 2006, should be disallowed because the relevant task—preparing the Complaint, civil cover sheet, and corporate disclosures—should have been performed by "an associate attorney or a paralegal." (*See* Opp'n Mot. Atty. Fees 10:28–11:2.) However, given the centrality of a complaint to the discovery process and to the ultimate success of a plaintiff's lawsuit, *see, e.g., Charles O. Bradley Trust v. Zenith Capital LLC*, No. 04–2239, 2006 WL 798991, at *3 (N.D.Cal. Mar. 24, 2006), the court cannot fault Browne for spending approximately one hour and six minutes reviewing that document, as well as ensuring that his client had properly disclosed their parent corporations and subsidiaries. As to the latter point, the court has recently explained,

> Without this information, the court risks retaining a case in which it unknowingly has a financial interest. Not only would the undersigned judge face public criticism in such a circumstance, but the public's confidence in an impartial judi-

ciary would be eroded. Failure to assist the court in protecting these and other interests ... amounts to sanctionable conduct.

*Wallis v. Centennial Ins. Co. Inc.*, No. 08–2558, slip op. at 2:1–17, 2009 WL 2194404 (E.D.Cal. July 7, 2009) (citing *Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir.2005); *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1136 (9th Cir.2001); Fed. R.Civ.P. 16(f)). Accordingly, the court will not deduct this amount from the proposed lodestar.

■ Defendant further disputes fees incurred by Perry on January 16, 2007, and January 24, 2007. According to plaintiff's counsel's billing statements, Perry billed five hours and eighteen minutes for "[r]eview[ing] and analyz[ing] case plan requirements," "research[ing] deadlines," and other case management issues, as well as "research[ing the] eastern district court['s] requirements for joint statements" and "[w]ork[ing] on [a] joint statement for [a scheduling] hearing and in preparation for [a] conference call with opposing counsel." (*See* Fee Ex. 2. Citing *In re Wepsic*, 238 B.R. 845 (Bankr.S.D.Cal. 1999), defendant contends that these tasks were "general education" and are "thus not recoverable.") (Opp'n Mot. Atty. Fees 1:24–26.)

Without "conceding the validity" of defendant's argument, plaintiff states that it "does not oppose" defendant's opposition to awarding these fees "due to the minimal amounts involved." (Reply 8:4–5.) The court finds that the time expended to become familiar with the Eastern District Local Rules governing scheduling procedures are in the nature of "general education" and should not have been billed to the client. *See generally, e.g., Perdue v. City Univ. of N.Y.*, 13 F.Supp.2d 326, 346 (E.D.N.Y.1998) ("Although Perdue's attor-

neys are entitled to reasonable compensation for time spent in researching employment discrimination law, they should not be fully compensated for their general education."). Accordingly, the court will deduct $528 from plaintiff's proposed lodestar.

■ Defendant also takes issue with 18.2 hours billed by Browne on November 29 and 30, 2007, to prepare for and travel to a deposition of defendant's "person-most-knowledgeable" pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. Apparently, this deposition did not occur; defendant contends that "in advance of the deposition," Gormley "exchanged [e-mails] with Mr. Browne ... regarding a rescheduling of this deposition due to the parties' desire to schedule a mediation prior to the deposition. Therefore, if Mr. Browne did in fact travel to San Francisco, he did so knowing that a deposition would not occur ...." (Opp'n Mot. Atty. Fees 9:15–24; *see* July 13, 2009 Gormley Decl. ¶ 2.)

In response, plaintiff's counsel flatly rejects defendant's assertions. In a declaration, Browne states:

> Ms. Gormley never informed me or anyone else at my firm that she intended to reschedule or cancel the deposition.... I do not recall receiving any e-mail from Ms. Gormley indicating a desire to reschedule that deposition. I traveled to the Bay Area for the deposition, fully and reasonably expecting it to take place as-noticed.

(Aug. 10, 2009 Browne Decl. ¶ 2.)

Having carefully considered the relevant declarations as well as the parties' arguments at the hearing on this matter, the court does not lightly question counsel's candor. Nonetheless, assuming that this issue amounts to a matter of miscommunication, defense counsel is plainly in the best position to clarify the matter by providing the e-mail exchange referenced in Gormley's July 13, 2009 declaration. Defense counsel has not done so, and plaintiff can hardly be expected to prove a negative. Accordingly, the court will not deduct the fees relating to the November 30, 2007 deposition from the proposed lodestar.

■ Defendant further requests that the court reduce the fees incurred by Browne and Brophy by twenty percent—$39,239.16 and $18,888.12, respectively—due to their "unrestrained" and "extensive" use of "block-billing." (Opp'n Mot. Atty. Fees 12:4–14:25.) In support of this across-the-board reduction, defendant cites *Welch v. Metropolitan Life Insurance Co.,* No. 04–84, 2004 U.S. Dist. LEXIS 28576, at *9 (C.D.Cal. Sept. 20, 2004), which in turn referenced a publication by the California State Bar, stating, "The practice [of block-billing] ... may increase time by 10% to 30%."

The district-court authority cited by defendant was reversed in *Welch v. Metropolitan Life Ins. Co.,* 480 F.3d 942 (9th Cir.2007). In that case, the Ninth Circuit found that "the district court clearly erred in applying a 20 percent reduction to all of Welch's requested hours." *Id.* at 948. Indeed, contrary to defendant's proposal, extant caselaw provides that " 'the use of block billing does not justify an across-the-board reduction or rejection of all hours,' but only those that are block-billed." *Fitzgerald v. City of Los Angeles,* No. 03–1876, 2009 WL 960825, at *8 (C.D.Cal. Apr. 7, 2009) (quoting *Mendez v. County of San Bernardino,* 540 F.3d 1109, 1129 (9th Cir. 2008)). Here, defendant specifically identifies only 23.5 hours of block-billed time by Brophy and 14.4 hours of block-billed time by Browne, which would amount to a reduction of $8,960.40 rather than $58,127.28. (*See* Aug. 10, 2009 Browne Decl. ¶ 9.)

■ Importantly, however, even where hours are block-billed, a district court should refrain from reducing fees until it first determines whether " 'sufficient detail has been provided so that [the Court] can evaluate what the lawyers were doing and the reasonableness of the number of hours spent on those tasks.' " *Id.* (quoting *Smith v. District of Columbia,* 466 F.Supp.2d 151, 158 (D.D.C.2006)) (alteration in original). To be sure, the court must be "practical and realistic" regarding how attorneys operate; if attorneys "have to document in great detail every quarter hour or half hour of how they spend their time ... their fee[s] ... will be higher, and the lawyers will simply waste precious time doing menial clerical tasks." *Smith,* 466 F.Supp.2d at 158.

In this case, the vast majority of the block-billing identified by defendant involves the grouping of highly related tasks that rarely cover more than a few hours. *See Fitzgerald,* 2009 WL 960825, at *8 (finding block-billing acceptable where "[m]any of [the] entries identified as block-billing are actually different parts of the same task"); *cf. Role Models Am., Inc. v. Brownlee,* 353 F.3d 962, 971 (D.C.Cir.2004) (finding block-billed entries unreasonable because they "include[d] time spent on bankruptcy matters, which ha[d] nothing to do with th[e] appeal" and "prevent[ed] ... verifying that [appellant] deducted the proper amount of time"). Furthermore, in most of counsel's entries, the court is well-equipped to "compare the hours expended against the tasks and assess the reason-

ableness of those tasks."[3] *Fitzgerald,* 2009 WL 960825, at *8. Accordingly, having examined the instances of block-billing highlighted by defendant, the court does not find it necessary to reduce the proposed lodestar.

The last item of attorneys' fees contested by defendant concerns the fees incurred by one "R. Varner." Defendant contends that these fees "should be excluded" because plaintiff "ha[s] not set forth any information regarding the identity of this person." (Opp'n Mot. Atty. Fees 1:24–26.) Plaintiff's reply, however, explains that "R. Varner" refers to "the maiden name of Ryan Marie Brooks," an associate identified in plaintiff's motion for attorneys' fees and whose qualifications are adequately detailed. (Reply 7:27–8:2; *see* July 8, 2009 Browne Decl. ¶ 19.) Accordingly, the court will not deduct this amount from the proposed lodestar.

■ Regarding plaintiff's untaxed costs, defendant argues that two travel-expense items billed on February 17, 2008, are duplicative. (Opp'n Mot. Atty. Fees 11:19–23.) These expenses are in the amounts of $850.34 and $1016.39 and concern travel from Los Angeles, California, to Oakland, California. (*See* July 8, 2009 Browne Decl. Ex. 3 ("Fee Ex. 3"); *see also* Aug. 10, 2009 Browne Decl. Ex. 1.) Defendant contends that these items are "duplicative charges for the same travel," namely, the Rule 30(b)(6) deposition of defendant's "person-most-knowledgeable." (Opp'n Mot. Atty. Fees 11:21.)

**3.** Indeed, defendant's objection appears to criticize plaintiff's counsel for being *too* detailed in their billing, such as the following entry by Brophy: "Research legal authority for materiality of breach; research legal authority for excuse of conditions; research legal authority for satisfaction of promisor (ACMC) and duties of good faith and fair dealing; begin legal analysis." (Opp'n Mot. Atty. Fees 13:16–21 (quoting Fee Ex. 2).) Ap-

parently, defendant would prefer Brophy to simply enter "research legal authority" on his timesheets, but this would unfairly place him in a catch–22. *See In re Sealed Case,* 890 F.2d 451, 455 (D.C.Cir.1989) (per curiam) ("[W]e note numerous instances of ... specification that do not adequately describe the legal work for which the client is being billed. This makes it impossible for the court to verify the reasonableness of the billings....").

In response to this argument, plaintiff's counsel submits a sworn declaration, in which he provides:

Ms. Gormley informed me via e-mail the week before the deposition that only two of her witnesses could be there on [January 25th].... I offered to reschedule the entire deposition [to] a date when all three witnesses would be available. In Ms. Gormely's response ..., she requested that two of the witnesses ... proceed as scheduled on January 25, 2008, with the third to take place the following week.... The two travel expenses charged on February 17, 2008 ($840.34 and $1016.39) were for separate trips in consecutive weeks.

(Aug. 10, 2009 Browne Decl. ¶ 3.) Plaintiff's counsel also provides the relevant e-mail conversation as an exhibit to his declaration. (*See id. Ex.* 1.) Having reviewed the declaration and its exhibit, the court finds that the travel-expense items billed on February 17, 2008, were not duplicative.

### B. *Request to Recover Costs*

 Federal Rule of Civil Procedure 54(d)(1) instructs that "costs—other than attorney's fees—should be allowed to the prevailing party" unless a federal statute, Federal Rule of Civil Procedure, or a court order provides otherwise. "Rule 54(d)(1) creates a presumption in favor of awarding costs to a prevailing party, requiring the losing party to show why costs should not be awarded." *State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 723 (9th Cir. 2005) (citing *Save Our Valley v. Sound Transit*, 335 F.3d 932, 944–45 (9th Cir. 2003)). "[A] district court need not give affirmative reasons for awarding costs; instead, it need only find that the reasons for denying costs are not sufficiently persuasive to overcome the presumption in favor of an award. The presumption itself provides all the reason a court needs for awarding costs." *Save Our Valley*, 335

F.3d at 945. The type of costs that may be awarded, however, are limited to those enumerated in 28 U.S.C. §§ 1920 and 1821. *Alflex Corp. v. Underwriters Labs., Inc.*, 914 F.2d 175, 176 (9th Cir.1990) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441–42, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987)); *see* E.D. Cal. Local Rule 54–292.

In response to plaintiff's request to recover costs of $10,673.31, defendant objects to $3098.87 in expense items relating to court reporter's fees, E.D. Cal. Local Rule 54–292(f)(3) (citing 28 U.S.C. § 1920(2)); witness fees, *id.* 54–292(f)(8) (citing 28 U.S.C. § 1821); and fees for exemplification and copies, *id.* 54–292(f)(5) (citing 28 U.S.C. § 1920(4)).

#### 1. *Court Reporter's Fees*

Defendant objects to $245 charged by a court reporter for the non-appearance of defendant's "person-most-knowledgeable" at a Rule 30(b)(6) deposition scheduled for November 30, 2007. (Objs. to Bill of Costs 1:23–25; *see* Bill of Costs Ex. D.) This charge relates to the apparent miscommunication discussed previously in Subsection II.A.2; defendant's general counsel contends that she "exchanged [e-mails] with Mr. Browne ... regarding a rescheduling of this deposition," but plaintiff's counsel disputes this claim. (Opp'n Mot. Atty. Fees 9:15–24; *see* July 13, 2009 Gormley Decl. ¶ 2; Aug. 10, 2009 Browne Decl. ¶ 2.) Because the court previously permitted plaintiff to recover attorneys' fees for this deposition, the court will also permit plaintiff to recover the corresponding court reporter's fee. Again, counsel for defendant is in the best position to support its proffered reason for the non-appearance, but it has inexplicably failed to do so.

Defendant also objects to $187.50 charged by a court reporter for 2.5 hours of "waiting time" at the deposition of Bill

Manns on January 31, 2008. (Objs. to Bill of Costs 1:26–28; *see* Bill of Costs Ex. D.) Defendant's general counsel specifically contends:

> Plaintiff had served a general "Persons Most Knowledgeable" [notice] on a variety of categories. ACMC produced 3 individuals in response: Gloria Jenkins, Jodi Copeland[,] and Bill Manns. Mr. Manns deposition was not scheduled for a particular time. The court reporter was scheduled for the day based upon the deposition notice.

(July 13, 2009 Gormley Decl. ¶ 3.)

As discussed previously, however, plaintiff's counsel provides a declaration and a supporting exhibit indicating that Manns was the only "person-most-knowledgeable" to be deposed on January 31, 2008; the other two depositions occurred on January 25, 2008. (*See supra* Subsection II.A.2; *see also* Aug. 10, 2009 Browne Decl. ¶ 3; *id.* Ex. 1.) Although this does not necessarily contradict Gormley's assertion that "Mr. Manns deposition was not scheduled for a particular time," it does cut against her apparent suggestion that the "waiting time" resulted from all three deponents being scheduled for the same day.

Despite this disagreement, both Gormley and plaintiff's counsel appear to agree that the court reporter's charge for 2.5 hours of waiting time was inaccurate; Browne recalls that "Mr. Manns failed to show up until approximately 1:45 p.m. for a 1:00 p.m. deposition" (Aug. 10, 2009 Browne Decl. ¶ 3), while Gormley's "recollection was that we may have waited for Mr. Manns for about half an hour" (July 13, 2009 Gormley Decl. ¶ 3). Accordingly, under these circumstances, the court finds that the proper resolution of this objection is to reduce the court reporter's "waiting time" charge from $187.50 to $37.50.

■ Defendant's final objection regarding court-reporter fees involves a $732.35 payment by plaintiff's counsel to obtain an expedited trial transcript on June 22, 2009. (Objs. to Bill of Costs 2:1–7; *see* Bill of Costs Ex. D.) Plaintiff's counsel asserts that "[t]hese transcripts were made reasonable and necessary due to the fact that counsel for [d]efendant misstated witness testimony on a key point during her closing argument." (Reply 3:11–22.) Plaintiff's counsel used these transcripts to prepare and submit a supplemental brief before the court rendered its decision on June 23, 2009. (*Id.; see* Docket No. 105.)

■ The statute governing taxable costs permits the taxation of "[f]ees for ... transcripts *necessarily obtained* for use in the case." 28 U.S.C. § 1920(2) (emphasis added). "Whether a transcript or deposition is 'necessary' must be determined in light of the facts known at the time the expense was incurred...." *Estate of Le Blanc v. City of Lindsay,* No. 04–5971, 2007 WL 2900515, at *2 (E.D.Cal. Sept. 28, 2007) (Beck, Mag. J.) (citing *Barber v. Ruth,* 7 F.3d 636, 645 (7th Cir.1993)).

Although plaintiff's counsel's reason for ordering the expedited transcripts was legitimate, the court nonetheless concludes that these transcripts were not necessary under the circumstances. The court neither requested nor invited supplemental briefing after hearing counsel's closing arguments; however, if plaintiff's counsel believed that counsel for defendant had "misstated witness testimony on a key point," they could have so argued in a supplemental brief without obtaining expedited trial transcripts. If the court agreed or disagreed with counsel based upon its own recollection of the testimony, the additional expense of obtaining transcripts would be obviated. Alternatively, if the supplemental briefing prompted the court to inquire further, the court could then obtain the relevant transcripts itself while minimizing the necessary expense. Accordingly, the

court will disallow $732.35 from plaintiff's request to recover costs.

### 2. *Witness Fees*

■ Defendant objects to the airfare incurred by plaintiff to transport its witnesses to the trial. Specifically, plaintiff contends that the fares incurred for Leann Miller ($755.40), Grant Biggerstaff ($770), and Colby Reagan ($770) were "excessive" because "economy travel booked 2 weeks in advance" would be approximately $476, $539, and $539, respectively. (*See* Objs. to Bill of Costs 2:10–13, 2:25–27, 3:3–6.) To support its argument, defendant references fare quotations from the website Orbitz.com for a flight from Nashville to Sacramento on July 29, 2009. (*See id.* Ex. B.)

For purposes of taxing costs for witness fees, Rule 54(d) and Eastern District Local Rule 54–292 apply the provisions of 28 U.S.C. § 1821, which states in pertinent part, "A witness who travels by common carrier shall be paid for the actual expenses of travel on the basis of the means of transportation reasonably utilized and the distance necessarily traveled.... Such a witness shall utilize a common carrier at the most economical rate reasonably available." 28 U.S.C. 1821(c)(1).

Here, while it is true that the trial date in this case had been scheduled approximately three months in advance (*see* Docket No. 69), the occasional unpredictability of the court's calendar and the need to accommodate witnesses' schedules advises against purchasing costly airfare impetuously. Indeed, in this case, the trial was transferred from Judge Frank C. Damrell to the undersigned on June 1, 2009, due to unforeseen developments in a criminal trial. (*See id.* No. 70; Objs. to Bill of Costs Ex. A.) It is well-known, moreover, that the prevailing price of airline tickets varies with the season, the time of week, the time of day, the number and extent of layovers,

and the whims of the airlines; it would be inappropriate to speculate that defendant's proffered fares could have been reasonably obtained by plaintiff's witnesses. *See, e.g., MEMC Elec. Materials v. Mitsubishi Materials,* No. 01–4925, 2004 WL 5361246, at *8 (N.D.Cal. Oct. 22, 2004) ("Although Expedia.com lists somewhat lower economy airfares, there is no evidence in the record that these fares were in effect or 'reasonably available' at the time the witnesses came to Detroit, and Defendants have presented evidence that these were their 'actual' expenses." (citing 28 U.S.C. § 1821(c)(1))). Accordingly, having reviewed the travel documents submitted by plaintiff, as well as plaintiff's counsel's supporting declaration, the court finds that these actual travel expenses are not unreasonable and should be allowed.

■ Defendant further objects to costs for "2 of the 3 hotel nights" incurred for Miller's testimony because "Ms. Miller testified on a single day, June 18, 2009." (*Id.* at 2:10–13.) Considering that Miller traveled from Iowa to California to testify on June 18, 2009, it was not unreasonable for Miller to have obtained lodging in Sacramento for June 17, 2008, and June 18, 2008. In this respect, the court agrees with plaintiff's counsel that Miller should not be "required to take [a] red-eye flight[ ] back East the night [her] testimony ended." (Reply 4:10–13.) Nonetheless, plaintiff has offered no justification for Miller's hotel stay on the night of June 16, 2008, and the court cannot discern the necessity of this expenditure. Accordingly, the court will disallow $136.05 for Miller's hotel stay on that date. (*See* Bill of Costs Ex. E.)

Defendant also objects to various meal and transportation expenses incurred by plaintiff's three witnesses as "not allowable costs under 28 U.S.C. § 1821." These expenses, however, are expressly permitted by 28 U.S.C. § 1821, and they do not

appear unreasonable. *See* 28 U.S.C. § 1821(c)(3) ("[T]axicab fares between places of lodging and carrier terminals, and parking fees . . . shall be paid in full to a witness incurring such expenses."); *id.* § 1821(d)(1) ("A subsistence allowance shall be paid to a witness when an overnight stay is required. . . ."). Nonetheless, having determined that Miller's presence in Sacramento was unnecessary on June 16, 2008, the court will disallow $18.79 for her meal expenses on that day. (*See* Bill of Costs Ex. E.)

3. *Fees for Exemplification and Copies*

■ Defendant's final objection pertains to plaintiff's request to recover $2255.55 in fees for exemplification and copies of papers. Defendant contends that the court should disallow $596.60 of this amount, asserting that plaintiff has not "me[t] its burden of demonstrating that these charges were necessarily obtained for use in the case." (Objs. to Bill of Costs 3:10–14 (internal quotation marks omitted).) Defendant, however, does not indicate which of plaintiff's charges are objectionable and provides no explanation as to how it arrived at this proposed figure. The fees for exemplification and copies in this case are attested to as correctly stated and necessarily incurred by plaintiff's counsel and are thoroughly supported by documentation. (July 2, 2009 Brophy Decl. ¶¶ 1, 8; *id.* Exs. A, F.) Accordingly, the court will allow these costs.

IT IS THEREFORE ORDERED that:

(1) plaintiff's motion for attorneys' fees and expenses be, and the same hereby is, GRANTED in the amounts of $328,442.70 in attorneys' fees and $15,922.46 in untaxed costs; and

(2) costs of $9636.12 are allowed.