[Civ. No. 63443. Second Dist., Div. Four. July 22, 1982.]

MARY MARGOLIN et al., Plaintiffs and Respondents, v.
REGIONAL PLANNING COMMISSION OF LOS ANGELES
COUNTY et al., Defendants and Appellants;
SANTA MONICA MOUNTAINS COMPREHENSIVE
PLANNING COMMISSION, Intervener and Respondent.

**1000**

**COUNSEL**

John H. Larson, County Counsel, S. Robert Ambrose and Judith A. Fries, Deputy County Counsel, for Defendants and Appellants.

Carlyle W. Hall, Jr., Fredric D. Woocher, Michael S. Gendler and Alletta d'A. Belin for Plaintiffs and Respondents.

George Deukmejian, Attorney General, and Teddi Berger, Deputy Attorney General, for Intervener and Respondent.

**OPINION**

**LUROS, J.\***—By this decision we affirm the judgment of the superior court awarding $300,000 in attorneys' fees to counsel for respondents. Although no appeal was taken from the judgment for respondents on the merits, a brief recitation of the underlying action, which led to the award of the attorneys' fees, will provide assistance in understanding the basis for the award.

---

\*Assigned by the Chairperson of the Judicial Council.

Respondents brought the within action in 1977, alleging violations of the Subdivision Map Act (Gov. Code, § 66410 et seq.) by the Los Angeles County Regional Planning Department (RPD), and seeking a writ to compel its compliance therewith. Stated very simply, compliance with the Subdivision Map Act, requiring the filing of tentative and final tract maps, is required whenever real property is divided into five or more parcels. (Gov. Code, § 66426.) Property divided into four or fewer parcels is generally unregulated by the act. At trial, it was established that for a period in excess of 10 years, the Los Angeles County Regional Planning Department had, permitted, and perhaps encouraged, "4 x 4ing," a scheme permitting the creation of large subdivisions without compliance with the Subdivision Map Act. In 4 x 4ing, there are a series of conveyances, none of which involves more than four parcels but from which a subdivision of many more than four parcels ultimately results. The method is commonly utilized by family members, corporations using wholly owned subsidiaries, dummy corporations, or individual officers. (See *People* v. *Byers* (1979) 90 Cal.App.3d 140 [153 Cal.Rptr. 249].) The trial court concluded that as many as 10,000 illegal land parcels had been formed in Los Angeles County as a result of the conduct of the RPD. The court issued a writ of mandate compelling the RPD to develop procedures within four months to insure that, in the future, whenever evidence of an illegal subdivision is discovered, a notice of violation must be immediately recorded. Further, the RPD was ordered to file notices of violation within four months on all existing illegal subdivisions of which it had evidence in its files. The court retained jurisdiction to award reasonable attorneys' fees and otherwise enforce the writ.

After judgment was entered, respondents applied for attorneys' fees pursuant to Code of Civil Procedure section 1021.5 in the amount of approximately $346,000 in connection with the successful prosecution of the within action. The motion was supported by extensive time records for each attorney, law clerk, and professional assistant who had contributed to the lawsuit. Appellants challenged the amount of the fee requested and engaged in discovery on that issue. During that time, a motion to compel further deposition answers was brought by appellants, and the denial of that motion is the subject of one of appellants' contentions of error on appeal. The motion for attorneys' fees was ultimately heard on July 23, 1980, and on October 31, the court issued its memorandum of ruling awarding attorneys fees in the sum of $300,000. It is from that order that this appeal is taken.

I

■ Appellants first contend that the court erred in denying their motion to compel deposition answers. At issue is the relevancy of the salaries paid to respondents' attorneys with respect to an award of attorneys' fees. The trial court refused to compel the attorneys to answer questions concerning their salaries, concluding that the cost of legal services is not relevant to a determination of the reasonable value of those services. Appellants argue generally that material is discoverable if it is relevant to the subject matter, and that it need not necessarily be relevant to precise issues. No cases are cited, however, for the direct proposition argued here, that in assessing an award of attorneys' fees, the court should or may take into consideration the salaries earned by the individual attorneys, nor has our research disclosed any such case.

To the contrary, the California Supreme Court has established a method for determining the amount of attorneys' fees to be awarded in cases such as this, where public interest law firms have prosecuted litigation, the result of which is beneficial to the community as a whole. (*Serrano* v. *Priest* (1977) 20 Cal.3d 25, 35-48 [141 Cal.Rptr. 315, 569 P.2d 1303].) The *Serrano* court held that in determining the amount of fee to be awarded to counsel for successful litigants in such a case, the court must begin with a determination of the number of hours spent by each attorney on the case, multiplied by a reasonable hourly rate. (*Serrano* v. *Priest, supra*, 20 Cal.3d at p. 48.) That basic figure, often referred to in the cases as a "lodestar" or "touchstone," may then be augmented or reduced, taking into consideration various relevant factors.

Here, appellants quarrel not with the factors taken into consideration in augmentation of the basic fee, but in the computation of that lodestar figure itself, arguing that the court should have determined and considered the salary received by counsel during the relevant period. Appellants argue that salary is particularly relevant in a case such as this where the attorneys are members of a public interest law firm which does not bill its clients for its services. Under those circumstances, they argue, the court cannot determine value without being apprised of the attorneys' earnings.

California cases have devoted little attention to the elements which should comprise a determination of the reasonable hourly value of an attorney's services. Federal cases have examined the subject more close-

ly, however, and their reasoning is both persuasive and appropriate for consideration. In *Serrano*, the California Supreme Court cited and relied on many federal decisions in promulgating the California rules. In *Copeland* v. *Marshall* (D.C. Cir. 1980) 641 F.2d 880, at page 892, the court first cited the rule followed in California: "Any fee-setting inquiry begins with the 'lodestar': the number of hours reasonably expended multiplied by a reasonable hourly rate." (*Id.*, at p. 891.) The court then broke down the elements of the lodestar and observed: "The reasonable hourly rate is that prevailing in the community for similar work. As we noted a reasonable hourly rate is the product of a multiplicity of factors .... the level of skill necessary, time limitations, the amount to be obtained in the litigation, the attorney's reputation, and the undesirability of the case. [Citation.]" (*Id.*, at p. 892.) Not only did the *Copeland* court not list attorney's salaries or other overhead costs as an appropriate element in fee determination, but the court expressly rejected that suggestion. The court observed that consideration of attorneys' salaries would also require inquiry into all overhead expenses, together with a determination of the extent to which those costs could be attributable to the particular piece of litigation at hand. The court concluded that the necessity of answering these questions "creates the specter of a monumental inquiry on an issue wholly ancillary to the substance of the lawsuit." (*Id.*, at p. 896.)

In reiterating its approval of a "market value" approach to the awarded fees, rather than a "cost plus" approach, the court observed that the market value approach is more likely to entice competent counsel to undertake representation of difficult and otherwise unrewarding cases. Moreover, where the successful plaintiff is represented by a public interest law firm, a cost plus rather than market value analysis could reward the defendant based on the fortuity of the identity of plaintiff's counsel. *Copeland* v. *Marshall, supra*, 641 F.2d at pages 896-899.

We are also persuaded that the cost of providing legal services is not relevant to a determination of their value. Attorneys' fees for hours spent in legal research, for example, should be awarded based on the quality of the research done and the benefit it produced for the client and the community, not on the cost of heating and lighting the office where the work was performed.

California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award. (*Serrano* v.

*Priest, supra,* 20 Cal.3d at p. 48; *Mandel* v. *Lackner* (1979) 92 Cal.
App.3d 747, 758 [155 Cal.Rptr. 269]; *Fed-Mart Corp.* v. *Pell Enter-
prises, Inc.* (1980) 111 Cal.App.3d 215, 224 [165 Cal.Rptr. 525].
Consideration of the cost of providing services has no place in that for-
mula. Therefore, the trial court correctly denied appellants' motion to
compel discovery of the attorneys' salaries in this case.

II

■ Appellants next contend that the court erred in admitting evi-
dence of attorneys' fees awarded to respondents' counsel in other
litigation. Respondents introduced evidence of attorneys' fees which had
been awarded to members of their firm between the years 1977 and
1979 in nine other lawsuits prosecuted in the public interest. That evi-
dence included the reasonable value of attorneys' services in each case.

Appellants contend that the evidence of hourly rates awarded in oth-
er cases was not supported by a proper foundation and was therefore
inadmissible. They argue that no evidence was presented to the court to
explain the basis on which those hourly rates were awarded to counsel
in other cases, the nature of other litigation, its difficulty and other fac-
tors which might have affected the award.

This argument is fallacious. The hourly rates sought by and awarded
to counsel in these other cases were the basic rates charged by the law-
yers, law clerks, and paralegals in that firm, part of the touchstone, the
starting point of the fee award. As the court explained in *Serrano,* using
hours spent times reasonable value, the court must then augment or di-
minish the total fees sought by numerous factors, including the novelty
and difficulty of the questions involved, the skill displayed and the con-
tingent nature of the fee. (*Serrano* v. *Priest, supra,* 20 Cal.3d at p. 49.)
Those factors are not part of the basic hourly rate, nor were they in-
cluded in the evidence presented to the trial court below.

As such, the figures are obviously relevant, particularly in determin-
ing the reasonable value of services rendered by a public interest law
firm which does not bill its clients. The most analogous evidence to fees
charged by a private law firm would be fees sought and deemed reason-
able by courts in other cases.[1]

---

[1]We note that although appellants assail the propriety of the court's willingness to
consider fees awarded in other cases, in their memorandum of points and authorities in

Finally, and fatal to appellants' position, is the fact that the trial court did not rely on fees awarded in other cases in reaching its decision here. In its memorandum of ruling, the court explained:

"The parties suggest a number of ways to get appropriate hourly rates, including reference to rates set in other cases [or] an average thereof . . .

"The court does not choose to follow any one of these, although it has considered each in making the determination set out below. Instead the court assigns to each employee of petitioner an hourly rate which, in the court's mind, is a fair equivalent of those rates charged by comparable law firms for the work of similarly situated partners, associates and lay experts."

The court then went on to explain in detail the method by which each base hourly rate was established and ultimately the extent to which it was augmented and the factors supporting that augmentation.

The trial court did not err in admitting into evidence an itemization of attorneys' fees awarded in other litigation.

### III

 Finally, appellants contend that the attorneys' fees must be reduced because they were not supported by adequate time records and because the evidence reflects duplication of effort. ██ ██ Appellants cite instances in the evidence where hours worked are estimated and not supported by records.[2] Appellants' contention is really one of insufficient evidence to support the court's judgment. As such, it fails since all hours allegedly worked by counsel for which no time records were available were attested to by the attorneys under oath. The problem then becomes one of fact finding. As to both issues raised here, the court found against appellants. For example, the court found:

opposition to the motion for award of fees below, appellants made reference to relatively low fees awarded to respondents in one of those cases, and in fact attached a copy of the court's opinion in that case to its motion.

[2]Appellants have recited in their brief considerable testimony apparently taken from depositions in this matter. Inasmuch as the depositions were not made part of the record on appeal, those portions of appellants' briefs have not been considered by this court. (See *Lady v. Barrett* (1941) 43 Cal.App.2d 685, 687 [111 P.2d 702].)

"The work of Ms. Lewis is described in the Belin declaration, page two, et seq. Although no time records were kept for her the 120 hours estimated for her work seems reasonable and the court accepts it. The total time of 305 hours spent by her and three law clerks appear reasonable and the court accepts said statement of time spent."

Likewise, on the issue of duplication of services, the court found: "There is some duplication of time spent in depositions and other matters, but considering the importance of preparation for trial in this case the duplicated time was not inappropriate." That factual determination by the trial court is binding on this court, if supported by any substantial evidence. The records reflect that the vast majority of the hours devoted to this matter by respondents' counsel were substantiated by contemporaneous time records, and the trial court's acceptance of the total hours spent is clearly supported by the record.

"The 'experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.' [Citations.]" (*Serrano* v. *Priest, supra*, 20 Cal.3d at p. 49.)

The judge who awarded fees here was, of course, the trial judge who was intimately familiar with the quality of services performed by respondents' counsel and the amount of time devoted to the case. Nothing in the record indicates that the award of $300,000 attorneys' fees constituted an abuse of discretion.

The judgment is affirmed. Respondents to be awarded their costs on appeal.

McClosky, Acting P. J., and Berg, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.