NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP Nos. NV-19-1121-BGL |
| | NV-19-1122-BGL |
| MOUNTAIN AIR ENTERPRISES, LLC | (Related Appeals) |
| Debtor. | Bk. No. 3:17-bk-51391-BTB |
| STEVEN SCARPA, | |
| Appellant, | |
| v. | MEMORANDUM* |
| ALEXANDER KENDALL, Administrator of the Estate of Bijan Madjlessi, | |
| Appellee. | |

Argued and Submitted on May 21, 2020

Filed – June 19, 2020

Appeal from the United States Bankruptcy Court
for the District of Nevada

---

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Honorable Bruce T. Beesley, Bankruptcy Judge, Presiding

———————

Appearances:     Amy N. Tirre argued for appellant Steven Scarpa; Joe R.
                 Abramson argued for appellee Alexander Kendall,
                 Administrator of the Estate of Bijan Madjlessi.

———————

Before:     BRAND, GAN, and LAFFERTY, Bankruptcy Judges.

## INTRODUCTION

Appellee Alexander Kendall, Administrator of Estate of Bijan Madjlessi ("Madjlessi Estate"), filed a proof of claim ("Claim No. 2") for attorney's fees as prevailing party in prior litigation with the debtor. Appellant Steven Scarpa objected to Claim No. 2 as to the amount and on the grounds that attorney's fees were awarded to all three prevailing parties in the case, not just the Madjlessi Estate, and therefore the fees should be awarded to all three. As an assignee of the fee award, Scarpa filed a proof of claim ("Claim No. 4") asserting his entitlement to a portion of the fees awarded in Claim No. 2. The Madjlessi Estate objected to Claim No. 4. The bankruptcy court sustained in part and overruled in part Scarpa's objection to Claim No. 2 and sustained the Madjlessi Estate's objection to Claim No. 4. Scarpa appeals both orders.

Because the bankruptcy court did not abuse its discretion in determining the amount of the fee award, we AFFIRM that portion of the order for Claim No. 2. The bankruptcy court erred, however, in determining that only the Madjlessi Estate was entitled to it. Therefore, we REVERSE the

2

portion of the order for Claim No. 2 awarding fees only to the Madjlessi Estate and REMAND with instructions for the bankruptcy court to enter an order awarding fees to all prevailing parties, without apportionment as between them. The apportionment of fees is a dispute among nondebtor parties and should be resolved by the parties or in state court. We also REVERSE the order on Claim No. 4 and REMAND with instructions for the bankruptcy court to enter an order sustaining the objection as to the request to apportion the fee award between the prevailing parties.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A.     Prepetition events**

**1.      Background of the parties**

Scarpa is an experienced real estate investor and developer. He is the sole member and manager of the debtor, Mountain Air Enterprises, LLC ("Mountain Air"). Bijan Madjlessi, now deceased, was an experienced licensed contractor and real estate developer. Scarpa and Madjlessi met in approximately 1988 and engaged in many business deals over the years.

In 2004, Madjlessi brought in Glenn Larsen as a business partner in the real estate deal that resulted in the litigation leading to the subject attorney's fee award. The details of that deal are not terribly important for our purposes here. Suffice it to say, in 2005 and 2006, Scarpa, Madjlessi, Larsen, and Sundowner Towers, LLC ("Sundowner"), an LLC co-owned equally by Madjlessi and Larsen, entered into a series of agreements related to the

3

acquisition and development of the former Sundowner Hotel & Casino in Reno, Nevada. Scarpa formed Mountain Air to hold his interest in the property.

Through a series of complicated transactions involving multiple agreements, title to what is known as the South Tower portion of the property was transferred to Mountain Air, subject to a Repurchase Agreement and an Option Agreement held by Sundowner. Madjlessi and Larsen personally guaranteed Sundowner's obligations under both agreements. David Santi, an attorney who did legal work for both Scarpa and Madjlessi, drafted these agreements for the parties.

### 2. The state court litigation

#### a. California trial court

In 2008, Mountain Air filed suit in the California state court against Madjlessi, Larsen, and Sundowner (collectively, "Defendants") asserting two causes of action: (1) breach of contract against Sundowner, alleging that Sundowner breached the Repurchase Agreement by refusing to buy back the South Tower; and (2) breach of the written guarantees against Madjlessi and Larsen, based on the same alleged default under the Repurchase Agreement ("State Court Action"). In their defense, Defendants argued that: (1) the Repurchase Agreement was illegal and therefore void and unenforceable; and (2) even if it was valid, the later-executed Option Agreement was a novation that extinguished all rights and obligations under the Repurchase Agreement.

4

Defendants were represented by two attorneys before the trial court. One was Joe Abramson. Per the terms of his engagement letter, Defendants were "jointly and severally liable" for payment of fees, but invoices were to be sent directly to Madjlessi and Madjlessi and Larsen would work out between them how the invoices would be paid. Historically, all fees paid to Abramson were paid by Madjlessi (and later by his estate). Abramson's engagement letter also provided for an attorney lien on any recovery obtained by Defendants. The second attorney representing Defendants was David Lonich. Lonich agreed that he would be paid only if Defendants prevailed and recovered a fee award from Mountain Air. No engagement letter or attorney lien for Lonich was submitted in the record.

The California trial court held an 18-day bench trial. The first five days were spent on an Evidence Code § 402 hearing ("402 Hearing"). The issue there was whether Santi represented Scarpa or Madjlessi or both, and if Santi jointly represented them, whether the communications between Scarpa and Santi and Madjlessi and Santi were protected from disclosure by the attorney-client privilege. Defendants contended that Santi represented both Scarpa and Madjlessi; thus, no attorney-client privilege applied. Defendants prevailed. Santi was ordered to produce otherwise protected correspondence and was examined extensively at trial regarding the drafting of the Repurchase Agreement and the Option Agreement and his communications with Scarpa.

5

Following another 13 days of trial, the trial court entered a 40-page final decision in October 2012, ruling for Defendants. It found that the Repurchase Agreement was "void, illegal and unenforceable." It also concluded that the Option Agreement was a novation and extinguished the Repurchase Agreement and any obligation Defendants had under it. Defendants prevailed on their affirmative defenses of illegality and novation. Mountain Air was awarded nothing.

Defendants, as prevailing parties, moved for attorney's fees under the attorney fee provisions in both the Repurchase Agreement and the Option Agreement.[1] Defendants requested fees of $640,998.50, or enhanced fees of $774,141. Defendants conceded that, if the court had to allocate fees between the illegality defense (which may not be compensable given the illegal Repurchase Agreement) and the novation defense (which was based on the valid Option Agreement), an appropriate reduction for the illegality defense would be $59,997.50. In other words, approximately 10% of the fees were incurred for that defense.

The trial court denied the fee motion, reasoning that fees were not

---

[1] As relevant here, the attorney fee clause in the Option Agreement provides:

If any legal action or any other proceeding . . . is brought for the enforcement of this Agreement or because of an alleged dispute, breach, default, or misrepresentation in connection with any provision of this Agreement, the prevailing party shall be entitled to recover reasonable attorney fees, expert fees and other costs incurred in that action or proceeding . . . .

available under either the illegal and void Repurchase Agreement or the Option Agreement. Defendants appealed the fee order.[2]

### b. The appeals

The California Court of Appeal reversed the fee order. It determined that Defendants were entitled to fees under the Option Agreement, reasoning that the novation defense fell within the meaning of the subject fee provision. Accordingly, the appellate court ruled:

> Because we have already determined that the form in which the issue was raised — an affirmative defense — is within the boundaries of litigation covered by the attorney fees clause of the option agreement, defendants are entitled to an award of attorney fees, **at least to the extent the litigation involved defendants' affirmative defense of novation**.

(Emphasis added). In a footnote following this sentence, the appellate court noted:

> We leave to the trial court, on remand, whether an apportionment of fees is appropriate in light of the litigation of issues extraneous to the novation defense.

Thus, it was up to the trial court whether it would award fees for litigation not directly related to the novation defense — i.e., the illegality defense and other issues.

---

[2] While the appeal of the fee order was pending, Madjlessi was killed in a car accident. Alexander Kendall was appointed as the Administrator of the Madjlessi Estate.

The California Supreme Court granted Mountain Air's petition for review. The Madjlessi Estate retained appellate attorney, Katharine Galston, to defend that appeal. Galston's fee was contingent upon a successful outcome for Defendants' fee award. Her engagement letter contained an attorney lien on any fees recovered by the Madjlessi Estate.

The California Supreme Court issued a published decision affirming the appellate court's award of attorney's fees to Defendants. Its ruling was silent as to whether or not Defendants could be awarded fees for matters unrelated to the novation defense.

While the appeal was pending, Scarpa and Larsen executed an assignment whereby, in exchange for $10,000 Larsen assigned to Scarpa his rights to any proceeds resulting from the State Court Action. The assignment was later amended to include Larsen's share of Sundowner's rights in any such proceeds. Effectively, Scarpa, principal of the losing plaintiff in the case, was now standing in the shoes of defendants Larsen and Sundowner (in part) for any fee award resulting from the State Court Action.

After the California Supreme Court issued its remittitur, counsel for Mountain Air and counsel for Defendants stipulated to extend the deadline for Defendants to file their fee motion in the trial court until December 15, 2017. One week later, Abramson withdrew as counsel for Larsen and Sundowner but continued to represent the Madjlessi Estate.

Represented by Abramson, the Madjlessi Estate filed a renewed motion

8

for attorney's fees on behalf of "Defendants" on December 15, 2017, requesting fees of $937,431.00, or enhanced fees of $1,344,726.20. This amount included fees for Abramson, Lonich, and Galston. While the motion contained all three Defendants' names in the caption and argued that "Defendants" were entitled to fees, the Madjlessi Estate argued that it should receive 100% of the fees awarded because Madjlessi paid the fees that were paid to Abramson, and Abramson waived any claim against Larsen or Sundowner for his outstanding fees of $61,819.88. The motion was never reviewed by the trial court, because Mountain Air filed its chapter 7[3] bankruptcy case the day before on December 14, 2017.

## B. Postpetition events

### 1. Madjlessi Estate's Claim No. 2

After being denied stay relief to proceed with the renewed fee motion in the California trial court, the Madjlessi Estate filed its 492-page Claim No. 2 for attorney's fees of $975,492.50, or enhanced fees of $1,386,735.84, associated with the State Court Action. This amount included fees for Abramson, Lonich, Galston, and the Madjlessi Estate's bankruptcy attorney, Stefanie Sharp.

Scarpa objected to Claim No. 2. In short, he argued that: (1) only fees incurred for the novation defense were recoverable; and (2) the Madjlessi

---

[3] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

Estate was only one of three prevailing defendant parties, and thus it was entitled to recover only one third of any fees awarded. Scarpa argued, without any real support, that the fees should be reduced by 75%, and later argued in favor of a 50% reduction.

Scarpa argued that fees incurred for the illegality defense were not recoverable based on the rulings by the California appellate courts and, in any case, a reduction in fees of only 10% for that defense was "arbitrary" and insufficient because more time was spent on that defense than contended. In addition, Scarpa argued that time spent on other non-novation defense matters was not recoverable, including 12 hours spent on other affirmative defenses, the 402 Hearing, the potential waiver of Madjlessi's Fifth Amendment rights, and opposing a petition for writ of mandate — all of which had nothing to do with the novation defense.

Scarpa also disputed the Madjlessi Estate's asserted entitlement to the entire fee award. Abramson represented all three Defendants, all three Defendants were liable under the engagement letter for payment of fees, and the California Supreme Court awarded fees to all three Defendants. Even though Madjlessi had paid Abramson's fees, argued Scarpa, that did not nullify Larsen's and Sundowner's ownership rights for their share of any fee award. Scarpa argued that he was entitled to 50% of the award because he was the owner of Larsen's one-third share (33%) and the owner of half of Sundowner's one-third interest (17%).

10

The Madjlessi Estate opposed Scarpa's objection to Claim No. 2. It argued that the California Supreme Court did not order the allocation of fees between time spent on one defense or the other. Thus, all fees were recoverable, not just those incurred for the novation defense. However, even if the fees had to be allocated, the Madjlessi Estate argued that a 10% reduction for fees related to the illegality defense — a total of $59,997.50 — was proper and supported by Abramson's and Lonich's declarations and invoices.

The Madjlessi Estate argued that attorney's fees incurred for the 402 Hearing, the potential waiver of Madjlessi's Fifth Amendment rights, and opposing the petition for writ of mandate were recoverable. The outcome of the 402 Hearing was critical to Defendants' establishment of the novation defense. Further, Madjlessi's testimony was vital to Defendants' success in the lawsuit, including the novation defense. As explained by the Madjlessi Estate, during a break in the trial of the State Court Action, Madjlessi was charged with a criminal offense related to the development of the subject property. Decisions needed to be made regarding whether his testimony in the State Court Action would constitute a waiver of his Fifth Amendment rights. Ultimately, it was decided that Madjlessi could provide certain testimony that would not waive his rights against self-incrimination but would benefit Defendants. Lastly, argued the Madjlessi Estate, the opposition to the petition for writ of mandate was another win for Defendants. The writ petition

11

ultimately resulted in Scarpa being removed from the case as co-plaintiff and the dismissal of his cause of action for breach of fiduciary duty against Madjlessi and Larsen.

As for Scarpa's second objection — who was entitled to receive the recoverable fees — the Madjlessi Estate argued that a prevailing party who has actually **incurred** attorney's fees can recover fees, but attorney's fees are not recoverable by a prevailing party who has not actually **paid** the fees. Here, Larsen and Sundowner had neither incurred nor paid any attorney's fees for the State Court Action.

### 2.    Scarpa's Claim No. 4

Scarpa filed Claim No. 4 requesting 50% of the (enhanced) attorney's fees the Madjlessi Estate was seeking in Claim No. 2, or $693,367.92. The Madjlessi Estate objected to Claim No. 4, arguing that it should be disallowed in its entirety. The Madjlessi Estate argued that the assignment by Larsen of his interest, and purportedly that of Sundowner, in any proceeds from the State Court Action did not transfer to Scarpa any rights in the attorney's fee award requested in Claim No. 2, because Larsen and Sundowner had not incurred and paid any fees and therefore had no right to receive any portion of those fees.[4]

---

[4] Scarpa opposed the Madjlessi Estate's objection to Claim No. 4, raising the same arguments as he did in his objection to Claim No. 2. The Madjlessi Estate acknowledged that the outcome of the two claims would not impact the administration of Mountain Air's essentially insolvent estate, but that it would have a "profound and far-reaching

(continued...)

### 3. Rulings on Claim No. 2 and Claim No. 4

The bankruptcy court entered an oral ruling on both claims. As for the **amount** of attorney's fees to be awarded, the court rejected Scarpa's proposed 50% reduction and reasoned that a 10% reduction for the fees incurred for the illegality defense was appropriate. However, the 10% reduction applied only to Abramson and Lonich, since Galston and Sharp were not involved with the underlying trial where legality was litigated. The court did not award the enhanced fee amount requested.

As for **who** was entitled to the award of attorney's fees, the court ruled that Scarpa, by way of his assignment, was not entitled to a ratable share of the fees, because: (1) Larsen and Sundowner never paid any of Abramson's attorney's fees and Abramson made no demand on them to pay any unpaid fees; and (2) Larsen and Sundowner were never entitled to any fees for Lonich, Galston, or Sharp, because (a) those attorneys were not retained by Larsen and Sundowner and (b) in any case, Larsen and Sundowner never paid of any their fees.

Thereafter, the bankruptcy court entered two orders: an order sustaining in part and overruling in part Scarpa's objection to Claim No. 2; and an order sustaining the Madjlessi Estate's objection to Claim No. 4. Claim No. 2 was allowed in the amount of $906,899.75. Claim No. 4 was disallowed

---

[4](...continued)
effect" on the future alter ego litigation to be asserted against Scarpa in the state court.

in its entirety. Scarpa timely appealed both orders.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1.    Did the bankruptcy court err in its ruling on Claim No. 2?

2.    Did the bankruptcy court err in its ruling on Claim No. 4?

## IV. STANDARDS OF REVIEW

In the claim objection context, we review the bankruptcy court's legal conclusions de novo and its findings of fact for clear error. *Lundell v. Anchor Constr. Specialists, Inc. (In re Lundell)*, 223 F.3d 1035, 1039 (9th Cir. 2000).

We review the bankruptcy court's award of attorney's fees under state law for an abuse of discretion. *Muniz v. United Parcel Serv., Inc.*, 738 F.3d 214, 218-19 (9th Cir. 2013). A bankruptcy court abuses its discretion if it applies the wrong legal standard, or misapplies the correct legal standard, or makes factual findings that are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

## V. DISCUSSION

### A.    Proofs of claim in bankruptcy

A creditor asserts a claim in bankruptcy by filing a proof of claim. § 501(a); Rules 3001 & 3002. A claim is "deemed allowed, unless a party in

14

interest . . . objects." § 502(a). If an interested party objects, the bankruptcy court, "after notice and a hearing, shall determine the amount of such claim . . . and shall allow such claim in such amount . . . ." § 502(b).

A properly filed proof of claim "shall constitute prima facie evidence of the validity and amount of the claim." Rule 3001(f). To overcome this presumption of validity, the objector must do more than formally object. *Lundell*, 223 F.3d at 1039. Instead, "[t]o defeat the claim, the objector must come forward with sufficient evidence and show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *Id.* (internal quotation marks and citation omitted). "'If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence.'" *Id.* (quoting *Ashford v. Consol. Pioneer Mortg. (In re Consol. Pioneer Mortg.*), 178 B.R. 222, 226 (9th Cir. BAP 1995), *aff'd*, 91 F.3d 151 (9th Cir. 1996) (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 174 (3d Cir. 1992)). The ultimate burden of persuasion, thus, remains with the claimant. Id.

**B. The bankruptcy court erred in part in its ruling on Claim No. 2, and it erred entirely in its ruling on Claim No. 4.**

The focus of Claim No. 2 was the amount of attorney's fees to be awarded against Mountain Air as the losing party in the State Court Action. In his objection to Claim No. 2, Scarpa maintained that all three Defendants,

as the prevailing parties, were entitled to whatever the bankruptcy court awarded. To preserve his right to share in that award, which he obtained by assignment from Larsen and Sundowner, Scarpa filed Claim No. 4, wherein he asserted a claim to half of the fees requested by the Madjlessi Estate. The filing of these competing claims certainly confused the issue. It would have been better practice for Scarpa not to have filed Claim No. 4 and simply asserted his rights to the fee award in Claim No. 2. In any case, we do not discern an abuse of discretion by the bankruptcy court in allowing a claim for attorney's fees against Mountain Air for $906,899.75. However, the court erred when it awarded the entire amount of fees to the Madjlessi Estate.

**1. Amount of attorney's fees allowed was proper.**

Defendants were the "prevailing party" in the State Court Action and were entitled to an award of attorney's fees to be determined by the California trial court or, in this case, the bankruptcy court. California Civil Code § 1717[5] provides that "[r]easonable attorney's fees shall be fixed by the court." The fee-setting inquiry in California ordinarily begins with the "lodestar," i.e., the number of hours reasonably expended multiplied by the

---

[5] Cal. Civ. Code § 1717(a) provides:

In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

reasonable hourly rate. "California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award." *Margolin v. Reg'l Planning Comm'n*, 134 Cal. App. 3d 999, 1004 (1982). "It is well established that the determination of what constitutes reasonable attorney fees is committed to the discretion of the trial court[.]" *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1096 (2000).

Scarpa raises several arguments here, but his overall argument is that the fees requested were excessive and that the bankruptcy court abused its discretion in reducing them only by an "arbitrary" amount of 10%.[6] First, Scarpa argues that Defendants could not recover fees for time spent on affirmative defenses not related to the novation defense, and more time was spent on the illegality defense than contended. According to Scarpa, only a 10% reduction for time spent on all of these non-recoverable defenses was arbitrary under the circumstances. We disagree. Even if one interprets the state court decisions as narrowly as Scarpa contends, the California Court of Appeal made clear that it was up to the trial court whether to apportion fees for time spent on issues extraneous to the novation defense; the California Supreme Court's decision was silent on the matter. In any case, the 10%

---

[6] We find it difficult to give credence to Scarpa's arguments that the fee award should have been less, while at the same time claiming to be one of the recipients of the fees. Of course, his real interest is in reducing the fee award because he may be the party having to pay it.

reduction was not "arbitrary" and was supported by the record. The bankruptcy court apparently gave more weight to the Madjlessi Estate's evidence that approximately 10% of Abramson's and Lonich's time was spent on the illegality defense, as opposed to Scarpa's "argument" that 75%, then 50%, was a better number. Notably, that same 10% figure has been asserted since Defendants filed their first fee motion in 2012 after the California trial court entered its final decision. Counsel for Scarpa even conceded that, given the nature of the case and volume of invoices, it was "really hard" to determine what a proper reduction should be.

Scarpa next argues that the bankruptcy court abused its discretion by awarding fees for the 402 Hearing, the Fifth Amendment waiver issue, and the writ of mandate — all of which Scarpa argues had nothing to do with the novation defense. The Madjlessi Estate presented evidence that the 402 Hearing and Fifth Amendment waiver issue were critical not only to the success of the novation defense but to Defendants' success overall. Thus, we discern no abuse by the bankruptcy court in awarding fees related to these two matters. As for the writ petition, Scarpa argues that the Madjlessi Estate conceded that it had nothing to do with the novation defense. Again, as stated by the California Court of Appeal, the trial court had discretion to award fees for time spent on issues extraneous to the novation defense. But even if not, Scarpa notes that Abramson spent only approximately 12.6 hours on the writ petition. Given this relatively small amount of time in light of the

nearly 2300 hours of attorney time spent on this case, the bankruptcy court's decision to award fees for the writ petition does not constitute an abuse of discretion.

Scarpa also argues that the bankruptcy court abused its discretion by awarding fees for duplicative work. However, Scarpa did not identify in the record any specific duplicate entries or how much time was spent by attorneys doing the same task. And he does not do so on appeal. Accordingly, the bankruptcy court did not abuse its discretion by not deducting fees for the alleged duplicative work.

Lastly, Scarpa argues that the bankruptcy court abused its discretion in not reducing the amount of fees requested for Galston, which he claims are excessive and unreasonable. The only objection Scarpa raised before the bankruptcy court as to Galston's fees was that her "high" rate of $625.00 per hour had already factored in the contingent nature of her fees, and so it would be inappropriate to enhance her fees by a 2.0 multiplier. The bankruptcy court did not apply an enhanced multiplier to Galston's or anyone else's fees. Scarpa's new arguments on appeal about Galston's fees are not well-taken.

On this record, the amount of attorney's fees claimed in Claim No. 2 was prima facie valid. Scarpa did not come forward with sufficient evidence to rebut the presumption of validity and shift the burden to the Madjlessi Estate to prove the validity of that amount. Accordingly, the bankruptcy

19

court did not abuse its discretion by allowing Claim No. 2 in the amount of $906,899.75.

**2.      Awarding the fees only to the Madjlessi Estate was error.**

Without citing any authority, the bankruptcy court held that Scarpa, by way of his assignment from Larsen and Sundowner, was not entitled to any of the attorney's fee award because (1) Larsen and Sundowner never paid any of the attorney's fees at issue in Claim No. 2, and (2) Larsen and Sundowner were never liable for fees for Lonich, Galston, or Sharp because they did not retain these attorneys. As we explain below, the bankruptcy court failed to apply the correct California law.

All three Defendants were parties to the Abramson engagement letter. Under its express terms, all three were "jointly and severally liable" for payment of Abramson's fees and costs. Relying on *Trope v. Katz*, 11 Cal. 4th 274 (1995), Scarpa argued that, because all three Defendants had **incurred** fees and thus had become liable for and obligated to pay them, all three were entitled to the award of fees, regardless of who actually paid them. Also relying on *Trope*, the Madjlessi Estate argued that, for a prevailing party to receive an award of attorney's fees, the prevailing party must also have actually **incurred and paid** the fees.

In *Trope*, the California Supreme Court considered the "narrow issue" of whether an attorney who chooses to litigate pro se in an action to enforce a contract containing an attorney's fee provision can recover fees under

20

California Civil Code § 1717. 11 Cal. 4th at 280. The court construed the term "incur" as used in the statute to mean generally "become liable" for a fee, i.e., to "become obligated to pay it." *Id.* It further defined "attorney's fees" as the sum a litigant "actually pays or becomes liable to pay" for legal representation. *Id.* The court reasoned that an attorney representing himself is not entitled to fees, because he does not become liable to pay fees to another, and therefore does not "incur" fees within the meaning of the statute. "Thus, the key to the analysis of [California Civil Code] § 1717 under *Trope* is the *incurring* of fees." *Farmers Ins. Exch. v. Law Offices of Conrado Joe Sayas, Jr.*, 250 F.3d 1234, 1237 (9th Cir. 2001).

While *Trope* perhaps lends support to Scarpa's argument, the California Supreme Court has expressly rejected the Madjlessi Estate's argument that a prevailing party can only receive an award of attorney's fees if the party actually paid or became liable to pay the fees. *See Lolley v. Campbell*, 28 Cal. 4th 367, 373 (2002) (observing that "attorney's fees are incurred by a litigant if they are incurred in his behalf, even though he does not pay them."). In any event, we located a case neither party has cited that compels a ruling in Scarpa's favor.

In *International Billing Services, Inc. v. Emigh*, 84 Cal. App. 4th 1175 (2000), a group of engineers were sued by their former employer for breach of contract. The engineers' legal fees were paid for by their new employer. After the engineers prevailed at trial, they sought attorney's fees under California

21

Civil Code § 1717. The losing plaintiff argued that the engineers were not entitled to attorney's fees because they had not "incurred" any such fees. The court rejected this argument. Even though the engineers had not actually paid attorney's fees, the written retainer agreement between the engineers and their counsel made the engineers "jointly and severally liable for legal services" rendered. Thus, the engineers became "liable to pay" the fee even if they were not the source of payment the attorney agreed to look to first. Had the new employer not paid the fees, the engineers were responsible for doing so. Therefore, they had "incurred" fees and, by virtue of the reciprocity provision of California Civil Code § 1717, were entitled to an award of fees. *Id.* at 1192.

Here, because all three Defendants were "jointly and severally liable" for payment of Abramson's fee and therefore "liable to pay" it, all three were entitled to an award of his fee, even if Madjlessi was the one Abramson looked to first for payment and Madjlessi footed the bills. That Abramson has waived any claim against Larsen or Sundowner for the amount of his unpaid fees matters not. *See Rosenaur v. Scherer*, 88 Cal. App. 4th 260, 283 (2001) (waived attorney's fees are still "incurred").

All three Defendants were also entitled to an award of fees for Lonich, Galston, and Sharp. No retainer agreement was produced for Lonich, but it seems undisputed that Larsen and Sundowner did not retain him. Nonetheless, Lonich represented all three Defendants at the underlying trial.

22

As for Galston, the Madjlessi Estate and Galston maintained that she represented only the Madjlessi Estate in the appeal to the California Supreme Court and not Larsen or Sundowner. However, all three Defendants were named as parties in that appeal, and the California Supreme Court held that "Defendants" (plural) were entitled to an award of attorney's fees, not just the Madjlessi Estate. Similarly, by filing Claim No. 2, Sharp is trying to recover the same fee that was awarded to all three Defendants. Thus, regardless of how the Madjlessi Estate wishes to characterize things, counsels' post-trial efforts were solely for the purpose of recovering a fee award for the prevailing parties — here, all three Defendants. The Madjlessi Estate has not cited any authority that the party who pursues a successful appeal titled in the names of multiple co-parties is the only one who gets the award.

The Madjlessi Estate argued before the bankruptcy court that Larsen and Sundowner were not entitled to fees for Lonich, Galston, and Sharp, because Larsen and Sundowner did not retain these attorneys. Put simply, Larsen and Sundowner never "incurred" any fees for these attorneys because of the lack of an engagement letter with them. The bankruptcy court agreed. This same argument was expressly rejected in *International Billing Services*. The losing plaintiff argued that the trial court erred by awarding fees charged by patent attorneys who also defended the engineers in the litigation but were not retained by the engineers. The appellate court reasoned:

> We fail to see why the absence of an engagement letter changes the result as to the West firm. Not all contracts for legal services are in

23

writing, nor do they need to be in writing. Further, the Engineers were liable, based on a quantum meruit theory, for services rendered on their behalf, even if there was no legal services contract. The trial court was entitled to credit counsel's statement all defendants were obliged to pay West's fees, even though NAC actually paid them. Therefore, the West firm fees are procedurally in the same posture as the Boutin firm fees, at least insofar as IBS's "incur" argument.

*Int'l Billing Servs., Inc.*, 84 Cal. App. 4th at 1195.

Because all three Defendants had "incurred" attorney's fees, they were all entitled to an award of fees from Mountain Air. Accordingly, the bankruptcy court erred when it ruled that only the Madjlessi Estate was entitled to the fee award. The court further erred to the extent it held that Scarpa received nothing by the assignment because Larsen and Sundowner were never entitled to fees and had nothing to assign.

Our decision here does not dictate "how" the fees will or should be divided between the prevailing parties. It is undisputed that Madjlessi or his estate paid the lion's share of the fees owed to Abramson. Obviously, his estate is entitled to reimbursement for the amount paid. The other attorneys have not been paid by anyone. There is evidence in the record of an attorney lien for Galston, but not for Lonich or Sharp. However, how the prevailing parties divide these fees and pay their attorneys is of no concern to the bankruptcy court or the chapter 7 trustee, because that issue has no effect whatsoever on the administration of Mountain Air's estate. In the bankruptcy

claims context, the only concerns are whether the claim is valid and, if so, how much of it will be allowed. Should the parties be unable to resolve any potential dispute about how the fees will be divided or paid, the state court may be the better forum for resolving it.

## VI. CONCLUSION

As to the order on Claim No. 2, we AFFIRM the order, in part, with respect to the amount of prevailing parties attorney's fees awarded against the bankruptcy estate. We REVERSE and REMAND the order on Claim No. 2 in part and REVERSE and REMAND the order on Claim No. 4 with respect to the dispute over the identity of the holder of the prevailing attorney's fee claim and its potential apportionment among competing prevailing parties, an issue addressed in the resolution of both claim objections. The bankruptcy court erred when it determined that the Madjlessi Estate was the sole holder of the fee claim and that Scarpa was not entitled to any share of the fees. On remand, the bankruptcy court shall enter an order allowing the claim for attorney's fees, as quantified in its order resolving the objection to Claim No. 2, to all prevailing parties and shall enter an order on Claim No. 4 that the fee award is made as to all prevailing parties without apportionment. Any apportionment dispute among the non-debtor prevailing parties shall be resolved outside of the bankruptcy court.